UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                  :

DIPLOMATIC MAN, INC.,                 :

                    Plaintiff,          :

     -v.-                              :

NIKE, INC.,                        :

                    Defendant, Counter- :
                    Claimant and Third- :
                    Party Plaintiff,   :

LaRON JAMES a/k/a JUELZ SANTANA and   :
SANTANA'S WORLD,                  :

                    Third-Party      :
                    Defendants.     :
----------------------------------------------------------------x

08 Civ. 139 (GEL)

**OPINION AND ORDER**

Marshall Beil, McGuireWoods LLP, New York, NY,
and B. Trent Webb, Adam P. Seitz, Beth Larigan,
Jennifer Riggs, Shook Hardy & Bacon LLP, Kansas
City, MO for defendant, Counter-Claimant and Third-
Party Plaintiff.

GERARD E. LYNCH, District Judge:

Following the dismissal with prejudice of plaintiff Diplomatic Man, Inc.'s copyright

infringement action for failure to prosecute, defendant, counter-claimant and third-party plaintiff

Nike, Inc. ("Nike" or "defendant") moves for an award of attorneys' fees and costs pursuant to

17 U.S.C. § 505. The motion will be granted to the extent set forth below.

## BACKGROUND

### I.    Plaintiff's Copyright Claim

Plaintiff commenced this action in January 2008, alleging infringement of plaintiff's

copyright in a song titled "The Second Coming" commissioned by Nike to be used in a national

marketing campaign for its Air Force 25 shoe line.  The song itself was created in November

2006 and is a collaboration between hip-hop artist LaRon James, p/k/a Juelz Santana ("Santana")

and music producer "Just Blaze."  Together Santana and Just Blaze created, produced and

recorded "The Second Coming," with Santana composing the lyrics and providing the vocals,

and Just Blaze creating the music and beats and compiling and editing the recording.  Both

Santana and Just Blaze entered into licensing agreements with Nike, permitting Nike to use the

song in various ways in conjunction with its promotion of the Air Force 25 shoes.  (Larigan

Decl. Exs. C & D.)  Santana also warranted that he would secure all necessary releases from his

record label, music publisher or any other entity necessary to enable Santana's grant of the

license to Nike.  (Larigan Decl. Ex. C.)

    When the song was created, plaintiff Diplomatic Man was Santana's production

company.  In its complaint, plaintiff alleged that, pursuant to a 2002 contract between it and

Santana, it owns the copyrights to all of Santana's sound recordings, including "The Second

Coming."  (Compl. ¶¶ 4, 6.)  The complaint failed to mention that, prior to the creation of "The

Second Coming" in November 2006, plaintiff appears to have assigned any such ownership

interest in copyrights created by Santana to the record label Island Def Jam ("IDJ").  A three-

way contract among plaintiff, Santana and IDJ dated May 13, 2005, provides: "All Master

Recordings recorded during the Term[1] which embody the performances of [Santana] . . . and all

copyrights therein and thereto, . . . shall be entirely IDJ's property, free of any claims whatsoever

by [Diplomatic Man], [Santana], or any other Person throughout the world and in perpetuity."

---

[1] In August 2006, the Term was extended by, at a minimum, nine months.  (See Larigan
Decl. Exs. K § 1,  M; see also Larigan Decl. Ex. L ¶ 15.)  As a result, "The Second Coming,"
recorded just several months later in November 2006, falls within the ambit of this agreement.

(Larigan Decl. Ex. L ¶ 9.)[2]

Shortly following the recording of "The Second Coming," Nike shot footage of a "making of" video, showing how the song was created and featuring clips of Santana and Just Blaze in the studio. (Larigan Decl. Ex. B.) One of the individuals appearing in this video is Cameron Giles (p/k/a "Cam'Ron"), plaintiff Diplomatic Man's founder, sole shareholder and CEO. In the video, Cam'Ron is seen and heard talking with Santana about the song and discussing and viewing the Nike commercial in which the song is used. Nike represents that during the filming of the video, Cam'Ron never objected to Santana's participation in the Nike marketing campaign or otherwise objected to the use of the song in the commercial. Indeed, Cam'Ron authorized his agent to sign a release for Nike to use Cam'Ron's image in the "making of" video. (Larigan Decl. Ex. E at Nike 0000356.)

Nevertheless, following the airing of the Nike commercial, Cam'Ron told IDJ that he (and thus Diplomatic Man) had not authorized Santana's participation in the commercial. Prior to filing the instant action, plaintiff's counsel emailed IDJ's parent company, Universal, to confirm plaintiff's ownership of the recording. Universal responded that it did not agree "that Diplomatic Man (as opposed to IDJ) would own the master recording." (Ex. I.)

## II.  Procedural History

Undeterred, plaintiff commenced this action on January 8, 2008, asserting one count of copyright infringement against Nike regarding its use of "The Second Coming." Nike responded

---

[2]  This agreement amends an earlier 2002 agreement between plaintiff and Roc-A-Fella Records, a division of IDJ, providing IDJ with the exclusive copyrights in Santana's sound recordings. (Larigan Decl. Ex. K ¶ 5.01(a).) Thus the 2005 amendment served, in this regard, simply to reiterate IDJ's copyright ownership.

with several counterclaims.[3]  The parties thereafter engaged in discovery and both provided

initial discovery responses in August 2008.  Plaintiff, however, failed to take its discovery

obligations seriously.  Nike represents that in response to its document requests, plaintiff

produced in total only twenty-five pages, which consisted of an agreement between plaintiff and

Santana, and the copyright registration in "The Second Coming." (D. Mem. 7.)  Throughout the

fall of 2008, Nike sent a number of letters to plaintiff requesting that it supplement its discovery

responses; plaintiff never responded.  Among Nike's unanswered document requests was a

request for the agreements between plaintiff and IDJ referenced above, which Nike had learned

of from filings in another matter.  As a result of plaintiff's persistent disregard for and non-

responsiveness to Nike's correspondence, Nike engaged in third party discovery that could have

otherwise been avoided.

On November 26, 2008 – the date set for the close of discovery – plaintiff's counsel

moved to withdraw, asserting that plaintiff had ceased communication with counsel, despite

counsel's repeated attempts to contact plaintiff to discuss discovery issues.  (Doc. ##25-29.)  By

order dated December 5, the Court directed plaintiff to "send an officer or other authorized

representative to appear" for a conference on December 12, and warned plaintiff that if it failed

to do so its suit would be dismissed for failure to prosecute.

Plaintiff did not send a representative to the conference on December 12, 2008, or

otherwise contact its counsel, defendant or the Court.  Accordingly, on December 17, 2008,

counsel's motion for leave to withdraw was granted and the action dismissed with prejudice for

---

[3]  Nike further responded with a third-party complaint against Santana and his company,
Santana's World.  Neither third-party defendant appeared in this case, and Nike has withdrawn
its third-party complaint in light of the dismissal of plaintiff's action.  (D. Mem. 6 & n.4.)

failure to prosecute pursuant to Rule 41.

Nike promptly moved for an award of attorneys' fees and costs against plaintiff pursuant to section 505 of the Copyright Act. Plaintiff continued its disregard for orderly process by failing to respond to Nike's motion. In this motion, Nike seeks $311,072.50 in attorneys' fees and $39,441.79 in costs for services rendered through November 2008. (D. Mem. 22.) It also seeks fees incurred in December 2008, which as of the time it filed the motion, had yet to be computed. (Id.) Accordingly, it stated that it would be submitting supplemental documentation of the fees and costs incurred in December 2008, including the costs attendant to making the present motion. (Beil Decl. ¶ 8; Webb Decl. ¶ 4.) To date, however, Nike has not done so.

## DISCUSSION

### I. Entitlement to an Award

The Copyright Act permits a court, "in its discretion [to] allow the recovery of full costs by or against any party other than the United States or an officer thereof. . . . [and to] award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. As is clear from the statute, such awards are at the discretion of the district court, and prevailing defendants and plaintiffs are to be treated alike. Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). The dismissal of plaintiff's case with prejudice on December 17, 2008, constitutes an adjudication on the merits, Fed. R. Civ. P. 41(b), and accordingly, Nike is the prevailing party entitled to move for an award of fees and costs. See Ninox Television Ltd. v. Fox Entm't Group, Inc., No. 04 Civ. 7891, 2006 WL 1643300, at *2 (S.D.N.Y. June 13, 2006), quoting Nemaizer v. Baker, 793 F.2d 58, 60 (2d Cir. 1986).

While there is no precise formula for determining when an award of costs and fees to the prevailing party is appropriate under the Copyright Act, "courts exercising their discretion

consider the equitable factors of 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" Hudson v. Universal Studios, Inc., 04 CV 6997, 2009 WL 536564, at *1 (S.D.N.Y. Mar. 4, 2009), quoting Crecent Publ'g Group, Inc v. Playboy Enters., 246 F.3d 142, 147 (2d Cir. 2001), quoting in turn Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994).  Of these factors, "objective reasonableness" is accorded "substantial weight." Bauer v. Yellen, 548 F. Supp. 2d 88, 96 (S.D.N.Y. 2008), quoting Matthew Bender & Co., Inc. v. West Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001).  Indeed, the "[o]bjective unreasonableness of a party's claims or defenses is sufficient to subject a party to an award of attorney's fees under § 505" without regard to any other equitable factor. Crown Awards, Inc. v. Discount Trophy & Co., Inc., 564 F. Supp. 2d 290, 294 (S.D.N.Y. 2008); see also Hudson, 2009 WL 536564, at *2.  "A plaintiff's claim of copyright infringement is objectively unreasonable when the claim is clearly without merit or otherwise patently devoid of a legal or factual basis." Contractual Obligation Prods., LLC v. AMC Networks, Inc., 546 F. Supp. 2d 120, 125 (S.D.N.Y. 2008) (internal quotations and punctuation omitted), and a "consistent lack of evidentiary support for the claim typically will render it objectively unreasonable," Vargas v. Transeau, No. 04 Civ. 9772, 2008 WL 3164586, at *2 (S.D.N.Y. Aug. 6, 2008).  Additionally, "[m]isconduct before or during litigation can, in appropriate cases, provide the basis for an award of fees." Crown Awards, 564 F. Supp. 2d at 294, quoting Matthew Bender, 240 F.3d at 126.

Plaintiff's claim of copyright infringement was objectively unreasonable on the merits and this unreasonableness was further compounded by plaintiff's conduct throughout the proceeding.  As an initial matter, it is not even clear that plaintiff owns the copyright in "The Second Coming." Although plaintiff may have at one time been the assignee of the copyright in

any song created by Santana, plaintiff appears to have transferred any such rights to IDJ prior to the creation of the song in question through both the 2002 agreement and reiterated through the 2005 amendment. Although neither of these documents are signed by Diplomatic Man in the versions provided to the Court,[4] a contract need not be signed to be enforceable, provided there is objective evidence that the parties intended to be bound. Flores v. Lower East Side Service Center, Inc., 4 N.Y.3d 363, 369 (2005). It is not necessary to resolve this issue however, because even if plaintiff were the valid copyright holder, it is clear that plaintiff authorized Nike's use of the song, at a minimum, through an implied license created through Cam'Ron's conduct in connection with the "making of" video. Cf. Korman v. HBC Florida, Inc., 182 F.3d 1291, 1293 (11th Cir. 1999) (implied license to use songs written for defendant radio station and allowed to be aired).

Moreover, it is apparent that the song – a collaboration between Santana and Just Blaze – is a work of joint authorship. Childress v. Taylor, 945 F.2d 500, 504, 508 (2d Cir. 1991) (citing a song in which one person creates the lyrics and another the music as the quintessential example of joint authorship). As plaintiff should have well been aware prior to commencing this lawsuit – as the following principle was explained to plaintiff in Diplomatic Man, Inc. v. Brown, No. 05 Civ. 9069, 2007 WL 2827125 (S.D.N.Y. Sept. 28, 2007), another meritless action brought by plaintiff concerning another of Santana's songs – "[j]oint authorship entitles the co-authors to equal undivided interests in the whole work – in other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the

---

[4] The 2002 agreement is incomplete and appears to be missing several pages, including, presumably, the signature page. (Larigan Decl. Ex. K.) And while the 2005 amendment was signed by IDJ and Santana, the signature line for Diplomatic Man is blank. (Larigan Decl. Ex. L.)

other joint owner for any profits that are made." Thompson v. Larson, 147 F.3d 195, 199 (2d

Cir. 1998), cited in Diplomatic Man, Inc. v. Brown, 2007 WL 2827125, at *1.  From this it

follows that "joint authors may legally grant a license to a third party to exploit the work without

co-author consent," Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 346 (S.D.N.Y.

2005), and that "a licensee is not liable to a non-licencing co-owner for use authorized by the

license . . . ." Davis v. Blige, 505 F.3d 90, 100 (2d Cir. 2007).

Just Blaze's grant of a license to Nike to use the song thus immunizes Nike from a charge

of infringement (insofar as its use does not exceeds the bounds of that license) and defeats any

potential claim of infringement by plaintiff. See Jasper, 378 F. Supp. 2d at 346. Plaintiff clearly

was aware that Santana was not the sole author of the work – if nothing else, through Cam'Ron's

participation in the "making of" video, which would have alerted him to Just Blaze's role in the

project – and plaintiff either knew or should have known that (or, at a minimum, should have

investigated whether) Just Blaze had licensed Nike's use of the song.  Just as in Diplomatic Man

v. Brown, "[s]ince Diplomatic Man was, at best, a co-owner of the copyright in question,

Diplomatic Man's claim of infringement . . . was objectively unreasonable, meriting a costs and

fees award in this case." 2007 WL 2827125, at *1 (involving a claim of infringement against co-

author of work).

Not only was plaintiff's copyright infringement claim so without merit as to make it

objectively unreasonable, but so too was plaintiff's conduct in the litigation.  Plaintiff was put on

notice of the weakness of its claim before the suit was brought, but nevertheless chose to

commence this action, requiring Nike to defend itself against public allegations of copyright

infringement and expend significant sums of money in doing so.  Plaintiff apparently, however,

did not care enough to engage in the process or pursue the matter on its merits and basically

8

abandoned the case, after Nike engaged in considerable discovery (but with minimal expenditure

of time or effort on plaintiff's part), stopping contact with its attorney and failing even to show

up for the attorney's motion to withdraw, leading its case to be dismissed with prejudice. All of

this conduct is characteristic of abusive litigation and further supports an award of fees and costs

to Nike.[5]

Finally, requiring plaintiff to bear Nike's reasonable costs in this action would further the

purpose of the Copyright Act by "compensat[ing] defendant[] for defending [its] right to free

expression and deterr[ing] other plaintiffs from bringing similarly unreasonable actions."

Vargas, 2008 WL 3164586, at *2. This need is heightened here, where the deterrent effect is

necessary not only to thwart unreasonable copyright actions generally, but also more specifically

to curb this particular plaintiff's propensity for bringing unreasonable actions. Despite

plaintiff's resounding loss in Diplomatic Man, Inc. v. Brown, and the resulting order to pay

$136,246.28 of its opponent's legal fees in September 2007, 2007 WL 2827125, at *2, plaintiff

proceeded to commence a similarly baseless lawsuit just three months later. For all of the above

reasons, an award of fees and costs is appropriate in this instance.

## II.    Amount of the Award

Nike's entitlement to a fee award having been established, the amount of such award

remains to be determined. The Copyright Act provides that a prevailing party may recover "full

---

[5] Nike contends that plaintiff's lawsuit was motivated by a feud between Cam'Ron and
Santana. While there is some evidence to support this theory, in the absence of stronger
evidence and adversarial testing, the Court declines to draw inferences about motivations based
on a partial and speculative record. Whatever plaintiff's motivation may have been, Nike is
entitled to fees and costs because, as established above, plaintiff was patently unreasonable both
in bringing this claim and in the overall conduct of the litigation.

costs" and "reasonable attorney's fees."  17 U.S.C. § 505.

A.      Attorneys' Fees

Nike seeks an award of its entire $311,072.50 of accrued attorneys' fees.  Upon a review

of the fees charged by Nike's counsel, they appear roughly reasonable and will be allowed in

full.  Although the fees may at first glance seem high – $311,072.50 for a case without much

action that did not make it past discovery – the circumstances attendant to this case make the

bills reasonable, both in the time counsel spent defending this action and the hourly rate charged

in so doing.  See Crown Awards, 564 F. Supp. 2d at 297 (noting that the starting point for

calculating reasonable attorneys' fees is "the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate" and that there is a "strong presumption" that the

resulting sum represents a reasonable fee).

Of the $311,072.50 in fees, $285,980.00 was incurred by lead counsel Shook, Hardy &

Bacon ("SHB") and the remaining $25,092.50 by local New York counsel, McGuireWoods.  As

required, Nike has submitted detailed time records from both SHB and McGuireWoods that

"specify, for each attorney, the date, the hours expended, and the nature of the work done."

Vargas, 2008 WL 3164586, at *3, quoting New York State Ass'n for Retarded Children, Inc. v.

Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  (Beil Decl. Ex. A; Webb Decl. Ex. A.)  SHB

devoted just over a thousand hours to this matter collectively between one partner, five

associates, a staff attorney and two paralegals, whose billing rates ranged between $155 (for a

paralegal) to $470 (for the partner) per hour.  (Webb Decl. Ex. C.)  In an effort to keep down

costs, the bulk of this work was delegated to the associates and staff attorney, with a total of just

over thirty hours of partner time.  (Webb Decl. ¶ 7; Webb Decl. Ex. C.)  On McGuireWoods'

end, just slightly over sixty hours total were spent in this litigation, which was handled almost

10

exclusively by one partner and a paralegal with billing rates of $650 and $200 respectively. (Beil Decl. ¶¶ 7, 11; Beil Decl. Ex. A.)

These billing rates are perfectly reasonable.  Indeed, the reasonableness of an hourly fee may be determined exclusively by "the rate a paying client would be willing to pay," Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008), and here Nike has in fact has paid these rates. (Biel Decl. ¶ 10; Webb Decl. ¶ 8.)  What's more, the fact that Nike, a highly sophisticated business client, has paid these bills,[6] presumably after careful review by its general counsel or other senior business executives, is prima facie evidence of the reasonableness of the amount as a whole (beyond just the reasonableness of the hourly rates charged), since Nike could not have assumed that it would be reimbursed in full, or even in part.

The general reasonableness of the fees is confirmed by a review of counsel's bills, which disclose no obvious problems of excess or waste.  Although some of the work performed may seem excessive in hindsight – as the case ultimately never progressed much beyond the preliminary stages – it was entirely  reasonable for counsel to prepare as though plaintiff would pursue this action.  Indeed, counsel would have performed unreasonably had it not done so. Thus the time spent in researching the contours of the claims and defenses, pursuing the third-party action against Santana, and preparing for depositions, although ultimately futile, was not unreasonable.  Moreover, it was plaintiff's own blatant disregard for the discovery process that caused Nike to spend additional time and money following up on plaintiff's discovery breaches

---

[6] As of the time of the submissions in connection with this motion in December 2008, Nike had paid all bills through October 2008 and there is no reason to believe that the lack of payment of bills beyond that date is attributable to anything other than processing time. (See Biel Decl. ¶ 10; Webb Decl. ¶ 8.)

and pursuing third-party discovery.  Finally, imposing the full costs on plaintiff, a successful

music production company, would further the purposes of the Copyright Act: "[g]enerally,

'where the plaintiff can afford to pay, the congressional goal of discouraging frivolous litigation

demands that full fees be levied' . . . ."  Vargas, 2008 WL 3164586, at *4, quoting Faraci v.

Hickey-Freeman Co., 607 F.2d 1025, 1028-29 (2d Cir. 1979).  Accordingly, Nike will be

awarded its full $311,072.50 in attorneys' fees.

    B.    Costs

Plaintiff also seeks reimbursement of $39,411.79 in litigation costs.  This is broken down

into $5378.73 in costs incurred by McGuireWoods (Beil Decl. ¶ 10) and $34,063.06 in costs

incurred by SHB (Webb Decl. Ex. B).  The latter number is inflated, as it includes a total of

$25,628.60 in "expenses" for McGuireWood's services, all of which are included directly as fees

and costs in McGuireWood's bills.  (Webb Decl. Ex. A.)  This appears to have resulted because

McGuireWood's invoices were sent to SHB, which in turn submitted joint invoices to Nike for

payment.  (Beil Decl. ¶ 8.)   Regardless of why this occurred, the inclusion of expenses from

McGuireWoods as additional costs on SHB's bills results in impermissible double counting of

this sum for the present purposes.  Accordingly, $25,628.60 of the requested costs will be

disallowed.

The request for the remaining $13,783.19 will be allowed.  Nike has thoroughly

documented these costs and they are comprised of the ordinary and reasonable expenses

attendant to the litigation, including expenses such as legal research, photocopying, process

servers, travel, court filing fees, and postage.

## CONCLUSION

For the foregoing reasons, Nike's motion for an award of reasonable costs and attorneys' fees against plaintiff pursuant to 17 U.S.C. § 505 (Doc. #41) is granted. Accordingly, Nike shall be awarded $311,072.50 in attorney's fees and $13,783.19 in costs, for a total of $324,855.69. To the extent Nike still intends to seek fees and costs for expenses incurred in December 2008, it is directed to submit supporting documentation by April 13, 2009. Plaintiff is directed to submit any objections to the amount of those fees and costs – and those only – by April 20, 2009. This is emphatically not an invitation to plaintiff to belatedly object to the fees and costs already sought by Nike and awarded in this order.

Further, upon the request of defendant, the third-party complaint against Santana and Santana's World is dismissed without prejudice, pursuant to Federal Rule of Civil Procedure 41(2).

SO ORDERED.

Dated: New York, New York
      April 6, 2009

                                             GERARD E. LYNCH
                                             United States District Judge

Copy by first class mail to:

Diplomatic Man, Inc.
c/o Elite Financial Management
744 Broad Street, 16th Floor
Newark, NJ 07102

13